FILED
2025 Dec-17  PM 12:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

FILED

2025 DEC 17  A 11: 48

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| Michael Moore, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | **Civil Action No** |
| | ) | |
| Southern Company | ) | |
| Chris Womack | ) | |
| Alabama Power | ) | |
| Jeff Peoples | ) | |
| Georgia Power | ) | |
| Kim Greene | ) | |
| Mississippi Power | ) | |
| Anthony L. Wilson | ) | |
| Defendants | ) | |

## COMPLAINT
## FEDERAL RACKETEER INFLUENCED AND CORRUPT, RICO

### PLAINTIFF DEMANDS TRIAL BY JURY

Plaintiff Michael Moore brings this Complaint for fraud, civil conspiracy, civil rights violations, illegal debt collection, extortion and bribery as defined by Federal Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1964, RICO, and various State Claims.

## THE PARTIES

1.  Plaintiff, Michael Moore is an adult Resident Citizen of Jefferson County
    State of Alabama.

2.  Defendants, Southern Company symbol, (*SO*), and Chris Womack
    President, Chief Executive Officer, of .Marilyn Cotton, is an adult Resident
    Citizen of Jefferson County State of Alabama. 30 Ivan Allen Jr. Blvd. NW,
    Atlanta, GA 30308.

3.  Defendants, Alabama Power stock symbol (*ALP-PQ*), and Jeff Peoples
    Chairman, President and CEO, of  Marilyn Cotton, an adult Resident Citizen
    of Jefferson County State of Alabama., 600 18th Street North, Birmingham,
    AL 3520

4.  Defendants, Georgia Power Company stock symbol (*GPJA*), and  Kim
    Greene Chairman, President and CEO, of Georgia Power Company, 241
    Ralph Mcgill blvd Ne, bin #10180, Atlanta, GA, 30308-3374

5.  Defendants, Mississippi Power Company, (*MPPRD*), and Anthony L.
    Wilson Chairman, President and CEO, of Mississippi Power Company, 2992
    W Beach Blvd, Gulfport, MS, 39501-1805

## JURISDICTION AND VENUE

6.  This Court has original subject-matter jurisdiction pursuant to 18 U.S.C. §
    1964(c) and 28 U.S.C. § 1331 because this action arises, in part, under the
    Federal Racketeer Influenced and Corrupt Organizations Act ("Federal
    RICO").

7.  This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs and there is complete diversity of citizenship between Plaintiff and the Defendants.

8.  This Court has jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331 and 1343. The Court has supplemental jurisdiction over Plaintiff's claims, which are based on state law, under 28 U.S.C. § 1367.

9.  Venue in the United States District Court for the Northern District of Alabama is proper pursuant to 28 U.S.C. § 1391.

10. This Court has jurisdiction over Plaintiff's related state and common law claims  pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Defendant, as the defendants are within this court's jurisdiction.

12. This Court further has personal jurisdiction over the Southern Company, Alabama Powers, Georgia Power and Mississippi Power under 28 U.S.C. § 1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, that Court may cause parties residing in another district to be summoned to that district if the "ends of justice require".

13. Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a). as **Defendants, Chris Womack President, Chief Executive Officer** of Southern Company, *(SO)*,  **Jeff Peoples Chairman, President and CEO,** Alabama Power (*ALP-PQ*), **Kim Greene Chairman, President and CEO**, Georgia Power Company (*GPJA*) and **Anthony L. Wilson Chairman, President and CEO** , Mississippi Power Company, (*MPPRD*)  participated and control the operations of these publicly traded cooperation.

14.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions that give rise to Plaintiff's claims occurred within this judicial district.

---

## FEDERAL AND STATE STATUES

15.    **18 USC § 1961(1) Pattern of Racketeering Activity Predicate Offenses**

RICO violations is a pattern of racketeering activities, that is, the patterned commission of two or more designated state or federal crimes.

(1)    "racketeering activity" means

(A)    any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year;

16.    **§1962. Prohibited activities**

(a)    It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or

participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase **do not** amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

## 17. 18 U.S.C. § 1951 - U.S. The Hobbs

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b) As used in this section--

The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

## 18. U.S. Code 18 U.S.C. § 1341

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives there from, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those

terms are defined in section 102 of the Robert T. Stafford Disaster Relief and
Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution,
such person shall be fined not more than $1,000,000 or imprisoned not more
than 30 years, or both.

19.    **18 U.S.C. § 1343**

Whoever, having devised or intending to devise any scheme or artifice to
defraud, or for obtaining money or property by means of false or fraudulent
pretenses, representations, or promises, transmits or causes to be transmitted by
means of wire, radio, or television communication in interstate or foreign
commerce, any writings, signs, signals, pictures, or sounds for the purpose of
executing such scheme or artifice, shall be fined under this title or imprisoned
not more than 20 years, or both. If the violation occurs in relation to, or
involving any benefit authorized, transported, transmitted, transferred,
disbursed, or paid in connection with, a presidentially declared major disaster or
emergency (as those terms are defined in section 102 of the Robert T. Stafford
Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a
financial institution, such person shall be fined not more than $1,000,000 or
imprisoned not more than 30 years, or both.

20.    **18 U.S.C. § 875 (d)**

Whoever, with intent to extort from any person, firm, association, or
corporation, any money or other thing of value, transmits in interstate or foreign
commerce any communication containing any threat to injure the property or
reputation of the addressee or of another or the reputation of a deceased person
or any threat to accuse the addressee or any other person of a crime, shall be
fined under this title or imprisoned not more than two years, or both.

21.    **Section 13A-8-15**

**Extortion in the Second Degree.**

        (a)    Extortion by means of a threat, as defined in paragraphs
(13)b or (13)d through (13)k of Section 13A-8-1,
constitutes extortion in the second degree.

(b)    A person is not liable under this section for a threat, as defined in paragraph (13)e of Section 13A-8-1, if he honestly claims the property as restitution or indemnification for harm done in the circumstances to which the threat relates, or as compensation for property or lawful services. The burden of injecting the issue of claim of right is on the defendant, but this does not shift the burden of proof.

(c)    Extortion in the second degree is a Class C felony.

22.    **Section 13A-8-14 Extortion in the First Degree.**

(a)    Extortion by means of a threat, as defined in paragraphs (13)a or (13)c of Section 13A-8-1, constitutes extortion in the first degree.

(b)    Extortion in the first degree is a Class B felony.

23.    **15 U.S. Code § 1692e - False or misleading representations**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

24. The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of—

(1) the character, amount, or legal status of any debt; or

(A)    **(B)** any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(B)    The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(C)    The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any

person or the seizure, garnishment, attachment, or sale of any
property or wages of any person unless such action is lawful
and the debt collector or creditor intends to take such action.

(2)    The threat to take any action that cannot legally be taken or that is not
intended to be taken.

**(6)** The false representation or implication that a sale, referral, or other
transfer of any interest in **a** debt shall cause the consumer to—

(A)    lose any claim or defense to payment of the debt; or

(B)    become subject to any practice prohibited by this
subchapter.

**(7)** The false representation or implication that the consumer committed any
crime or other conduct in order to disgrace the consumer.

**(8)** Communicating or threatening to communicate to any person credit
information which is known or which should be known to be false, including
the failure to communicate that a disputed debt is disputed.

**(9)** The use or distribution of any written communication which simulates or
is falsely represented to be a document authorized, issued, or approved by
any court, official, or agency of the United States or any State, or which
creates a false impression as to its source, authorization, or approval.

**(10)** The use of any false representation or deceptive means to collect or
attempt to collect any debt or to obtain information concerning a consumer.

**(11)** The failure to disclose in the initial written communication with
the consumer and, in addition, if the initial communication with
the consumer is oral, in that initial oral communication, that
the debt collector is attempting to collect a debt and that any information
obtained will be used for that purpose, and the failure to disclose in
subsequent communications that the communication is from a debt collector,
except that this paragraph shall not apply to a formal pleading made in
connection with a legal action.

**(12)** The false representation or implication that accounts have been turned over to innocent purchasers for value.

**(13)** The false representation or implication that documents are legal process.

**(14)** The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

**(15)** The false representation or implication that documents are not legal process forms or do not require action by the consumer.

**(16)** The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

**25.    Alabama Code  40-12-80 — Collection agencies.**

Each collection agency shall pay the following license tax: In towns and cities of 20,000 or more inhabitants, $100; in towns and cities of less than 20,000 inhabitants, $25. Each person who shall employ agents to solicit claims for collection from persons, firms, or corporations in the state shall be deemed a collection agency within the meaning of this section. This section shall not apply to any person who is excluded from the definition of the term "debt collector" under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6).

---

## COUNT 1
## FEDERAL RACKETEER INFLUENCED AND CORRUPT, RICO
### Violation of 18 U.S.C. § 1962C

26.    Subsection 1962(c) makes it unlawful for

(1)    any person,

(2)    employed by or associated with,

(3)    a commercial enterprise

(4)    to conduct or participate in the conduct of the enterprise's affairs

(5)    through  (b) a pattern of predicate offenses.

## STATEMENT OF THE CASE

## ANY PERSON

27.    This Case Is About, Threats, Extortion, Theft, Illegal Debt Collection, Wire

and Mail Fraud. Chris Womack, Jeff Peoples, Kim Greene, Georgia Power

and Anthony L. Wilson operate and control Southern Company and its

subsidiaries, Alabama Power, Georgia Power and Mississippi Power.

## EMPLOYED BY OR ASSOCIATED WITH A COMMERCIAL
## ENTERPRISE

28.    Chris Womack President and Chief Executive Officer of Southern

Company, (SO), Jeff Peoples Chairman, President and CEO, Alabama

Power (ALP-PQ), Kim Greene Chairman, President and CEO, Georgia

Power Company (GPJA) and Anthony L. Wilson Chairman, President and

CEO, Mississippi Power Company, (MPPRD) are the principal individuals

and Corporations that control and participate and operate a multi-state

organization the produce, trade in and sell and deliver electric Service across

several states and affect Interstate commerce.

## CONDUCT OR PARTICIPATE IN THE CONDUCT OF THE ENTERPRISE'S AFFAIRS

29.    These Defendants control and participate in these Corporations, a multi-state

organization that are publicly traded Corporations. These Defendants,

Corporations and executives, us their monopoly power with threats of denial

of service, to force, and extort funds from individuals seeking service to

surrender funds to these Defendants, Corporations, for alleged debts of other

persons, which the individuals are not legally liable for. Defendants,

Corporations used threats of denial service to collected other parties debts.

## INTERSTATE COMMERCE

30.    These Defendants are publicly traded corporations, an enterprise, and

conducts business across State line affecting interstate commerce. The

Conduct of these Defendants, publicly traded corporations, the enterprise,

uses threat and extortion, to illegal extort funds from individuals, and uses

this money, these defendants use the telephone, wire and violate other State

and Federal statutes to accomplish this extortion. The enterprise debt

collections of have one defendant collect debts for another defendant across

state line affects interstate commerce, these defendants use the telephone,

wire to accomplish this extortion and theft. These Defendants are publicly

traded corporations, enterprise,  that buys, sells and trade in electricity,

which is an interstate product and then use this electricity to, threaten the

dinal of supplying electric service, to extort funds from individuals.

---

## THE ENTERPRISE PARTICIPATING IN ACTIVITIES

## OD A PATTERN OF PREDICATE ACTS

31.    Defendants, Southern Company,  and its subsidiaries Alabama Power

Georgia Power Company Mississippi Power Company, the **ENTERPRISE,**

use their monopoly Power, and threats to carry out the following acts of

extortion, and thief. In the following three (3) instances, the **ENTERPRISE**

using it monopoly power, and threats by use of Wire in violation of the Wire

Act and Hobbs Act and other Federal and State Statues, to deny service,

does extort and attempts to extort funds from those seeking electric service.

32.    The **ENTERPRISE** also acts as debt collectors for each other. Alabama

Power will use it monopoly power, threat and extortion to collect alleged

debts of Georgia Power, and Georgia Power and Mississippi Power use their

monopoly power and threat o collect alleged debts of each other.

33.    The following 3 instance, each contain numerous violating of the Wire Act

and Hobbs act as well as violations of other Federal and State statues.

---

## INSTANCES 1

34.    **PLAINTIFF, Michael Moore,** is an adult resident in Alabama, on or about

May 2, 2022, and, through May 11, 2022, requested electric Service from

Alabama Power. Alabama Power using its monopoly power, on each and

every separate occasion, threatened to and did refuse to provide electric

service, and unlawfully demanded funds from **Michael Moore,** as a

condition to provide electric service.

35.    Alabama Power in may 2022 through May 11, 2022, Mr. Cotney an official

of Alabama Power, and other Alabama Power officials, made

approximately, nine (9) or more separate statements, predicate acts, asserting

that the Plaintiff, owed Alabama Power approximately $2000.00. Plaintiff

Michael Moore has voice recording and sworn affidavits by Mr. Cotney to

support these allegations.

36.    Alabama Power, Mr. Cotney knew these statements were false and made

misrepresentations and/or omission regarding the amount, character, and

legal status of the alleged debt as to being a lawful debt and that **Michael**

**Moore** was legally liable to Alabama Power for.

37.    Mr. Cotney, an Alabama Power employee and official, made and used

threats to withhold service and stated that Electric Service would not be

provided unless and until **Michael Moore** surrendered approximate

$2000.00 to Alabama Power for alleged debt of another person, **Michael Moore** was not legally liability for these alleged debts. Alabama Power could not collect these alleged debts through legal proceeding in the Courts of Alabama. **Michael Moore**, was denied service and as a result was damaged and injured,

38.    Alabama Power participation in these predicate acts in violation of Wire Act and Hobbs act, and other Federal and State Statues, that was in furtherance of the RACKETEERING ENTERPRISE scheme, to use threats to withhold service, and to defraud, extort, and steal funds, using, the telephone, in violation of the Wire Act and Hobbs by the RACKETEERING ENTERPRISE. Alabama Power was acting for and on behalf of the RACKETEERING ENTERPRISE and these predicate acts affected interstate commerce. As a result of Alabama Powers, illegal debt collection actions and threats, and actions to defraud, extort, steal, **the Plaintiff Michael Moore** was damaged and injured.

## **INSTANCES 2**

39.    **Melisa Acheson,** is an adult resident in Alabama, on or about August of 2017, **requested** electric Service from Alabama Power. Alabama Power using its monopoly power, on eight (8) power, on each and every separate

occasion, threatened to and did refuse to provide electric service, and

unlawfully demanded funds from **Melisa Acheson,** as a condition to provide

electric service.

40.  separate or more occasions, unlawfully demand funds from **Melisa**

**Acheson,** predicate acts, refused to provide electric service.

41.  Alabama Power in August of 2017, officials of Alabama Power made

approximately, nine (8) or more separate statements, asserting that the

Plaintiff, owed Alabama Power approximately $535.00. This alleged Debt

was asserted by Georgia Power and Alabama Power was acting as a debt

Collector for Georgia Power.

42.  Alabama Power, officials, knew these statements that were false and made

misrepresentations and/or omission regarding the amount, character, and

legal status of the alleged debt as to being a lawful debt and that **Melisa**

**Acheson** was legally liable to Alabama Power for.

43.  Alabama Power, made and used threats to withhold service, and stated that

Electric Service would not be provided unless and until **Melisa Acheson**

surrender $535.00 to Alabama Power, bases upon the alleged debt asserted

by Georgia Power.

44.  Alabama Power, officials, participation in these predicates act in furtherance

of the RACKETEERING ENTERPRISE, scheme, made and used threats to

withhold service to defraud, extort, steal funds, using, the telephone, Wire

Act and Hobbs act, and other Federal and State Statues, made

misrepresentations and/or omission regarding the amount, character, and

legal status of the alleged debt as to being a lawful debt and that **Melisa**

**Acheson** was legally liable for that alleged debt to Alabama Power.

Alabama Power could not collect this alleged debt through legal proceeding

in the Courts of Alabama. **Melisa Acheson** was forced to surrender $535.00

and was damaged and injured.

45.    Alabama Power participation in these predicate acts that was in furtherance

of the RACKETEERING ENTERPRISE scheme, to use threats to withhold

service, and to defraud, extort, and steal funds, using, the telephone, the wire

by the RACKETEERING ENTERPRISE. Alabama Power, was acting for

and on behalf of the RACKETEERING ENTERPRISE and these predicate

acts affected interstate commerce.

46.    Alabama Power was not and is not licensed to collected debts in the State of

Alabama and was unlawfully acting as debt Collector for Georgia Power. As

a result of Alabama Powers, illegal debt collection actions and threats, and

actions to defraud, extort, steal, **Melisa Acheson** was damaged and injured

## INSTANCES 3

47. **Johnny Dillard,** is an adult resident in Alabama, on or about November of

2024, **requested** electric Service from Alabama Power. Alabama Power

using its monopoly power, on six (6) on each and every separate occasion,

threatened to and did refuse to provide electric service, and unlawfully

demanded funds from **Johnny Dillard,** as a condition to provide electric

service.

48. Alabama Power in November 2024, on six (6) separate or more occasions,

officials, and/or employees, of Alabama Power, made and used threats to

withhold service and stated that Electric Service would not be provided

unless and until **Johnny Dillard** surrender $$690.00 to Alabama Power.

49. Alabama Made threats and demands that **Johnny Dillard** to surrender funds

for an alleged debt of another person, his deceased brother. This was a debt

that **Johnny Dillard** was not legally liability for. Alabama Power could not

collect this alleged debt through legal proceeding in the Courts of Alabama.

**Johnny Dillard** surrendered the funds as demanded, approximately, $690.00

and was damaged and injured.

50. Alabama Power participation in these predicate acts that was in furtherance

of the scheme, to use threats to withhold service, and to defraud, extort, and

steal funds, using, the telephone, the Wire by the RACKETEERING
ENTERPRISE. Alabama Power, was acting for and on behalf of the
RACKETEERING ENTERPRISE and these predicate acts affected
interstate commerce.

51.    Alabama Power, made and used threats to withhold service to defraud,
extort, steal funds, using, the telephone, Wire Act and Hobbs act, and other
Federal and State Statues, and made misrepresentations and/or omission
regarding the amount, character, and legal status of the alleged debt as to
being a lawful debt and that **Johnny Dillard** was legally liable of to
Alabama Power.  **Johnny Dillard** was forced to surrender $$690.00 and was
damaged and injured. As a result of Alabama Powers, illegal debt collection
actions and threats, and actions to defraud, extort, steal, **Johnny Dillard** was
damaged and injured.

---

## SUMMARY

52.    Each instance above describes and identify multiple predicated acts by
Alabama Power and the enterprise. Defendants, Southern Company,  and its
subsidiaries Alabama Power Georgia Power, Mississippi Power, the
enterprise and it defendants officials engaged in unlawful activities,
predicated acts, which affect interstate commerce to include but not limited

to,  18 USC § 1961(1), 18 USC §1962., 18 USC § 1951, USC  18 U.S.C. § 1341, 18 USC § 1343, 18 USC. § 875(d), Alabama Code §13A-8-15, Alabama Code §13A-8-14, 15 USC § 1692 e, Alabama Code  §40-12-80

53.    It is unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct, or participate, in a Pattern of activity, predicate offenses, extortion, including wire fraud and the Hobbs act as well as any act or threat, chargeable under state law and punishable by imprisonment for more than one year.

54.    These criminal actives, Pattern off activity predicate offenses, including, the use of intimidation, harassment, extortion to force and coerce individual seeking electric service to surrender funds in violations of the Wire Acts and the Hobbs act violations and violations of Federal and State criminal statutes.

55.    Alabama Power, acting for and on behalf of the **ENTERPRISE**, used threat of and the denial of service to coerce, persuade an unwilling persons to do something by using force or threats to unlawfully force the surrender of funds from individuals.

56.    Plaintiff was damaged by the denial of service, intentional inflection of emotion distress, and caused the Plaintiff, to  suffer serious physical and

mental isseus and suffered serious health problem and issue as a direct result of the denial of service.

57.    The U.S. Supreme Court held that while the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") does not permit civil claimants to recover for personal injury, it also "does not preclude recovery for all *economic harms that result from personal injuries*." *Medical Marijuana, Inc. v. Horn*, No. 23-365, 2025 WL 978102, at *11 (U.S. Apr. 2, 2025) (emphasis added). As a result of Alabama Power acting for and on behalf of the **RACKETEERING ENTERPRISE** in denying and refusing Service to the plaintiff, caused the Plaintiff to suffer economic harms that result from personal injuries. The denial, refusal of service caused the plaintiff to suffer economic harm and injury, great personal injury and mental anguish and other personal injuries and continues to suffer these injuries and harms,

58.    As a result of the Alabama Power acting for and on behalf of the **RACKETEERING ENTERPRISE,** denial of service to the Plaintiff, the Plaintiff, was caused and continues to suffer *economic harms that result from personal injuries* by Alabama Power actions. The Plaintiff Michael Moore has and still suffers from personal injuries and economic harm of over $1000.00 a month for equipment and resources and added expenses and

these injuries continues. As a result of such injury, plaintiff has been injured and continues to be injured,- $38,000 in current damages and $1000.00 for each and every month hereafter. The Plaintiff Michael Moore further demands triple damages and compensatory damages of $500,000 and $5,000,000 in putative damages and attorney fees.

## PLAINTIFF DEMANDS TRIAL BY JURY

Defendant Michael Moore, Plaintiff, respectfully submits the above claims,


Plaintiff – pro se          Date  12/16/2025
Michael Moore
6113 Castle Heights
Morris Al 35116
205.852.0762
Znoes@Hotmail.com